UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| MORGAN OTTMANN and SHEILA SCHMITZ, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> vs. <br><br> CLIENT SERVICES, INC., <br><br> Defendant. | Case No.: 17-cv-1069 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiffs pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Morgan Ottmann ("Ottmann") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Sheila Schmitz ("Schmitz") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes, namely a personal credit card debt.

6.  Defendant Client Services, Inc. ("Client Services") is a debt collection agency with its principal offices at 3451 Harry S. Truman Blvd., St. Charles, Missouri 63301.

7.  Client Services is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.  Client Services is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Client Services is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

### *Ottmann Letter*

9.  On or about October 12, 2016, Client Services mailed a debt collection letter to Ottmann regarding an alleged debt, allegedly owed to "CHASE BANK USA, N.A." ("Chase"). A copy of this letter is attached to this complaint as Exhibit A.

10. The alleged debt identified in Exhibit A is a credit card debt, issued by Chase and used only for personal, family or household purposes.

11. Schmitz used this credit card only for personal, family or household purposes, namely, purchases of household goods and services.

12. Schmitz did not open or use the credit card account for any business purpose.

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter used by Client Services to attempt to collect alleged debts.

15. Exhibit A contains the following text:

2

> We are offering you a settlement amount of $550.00, to settle this CHASE BANK USA, N.A. account for less than the balance due.* This offer is valid until 11/01/2016. If payment in full of the settlement amount is not received in our office by this date, this offer will be withdrawn and will be deemed null and void. We are not obligated to renew this offer. If you are unable to pay the settlement amount in full by this due date, please contact our office for alternative payment options which may be available to you.

Exhibit A.

16. The language described in the previous paragraph is confusing to the unsophisticated consumer.

17. Exhibit A is ambiguous and capable of at least two meanings.

18. The letter purports to offer a settlement of about 30% or 70% of the total alleged debt. But it is unclear whether the offer is for 30% off or 70% off.

19. A settlement amount of $550 can mean either Client Services is offering to settle the account for a total of $550 or for $550 off the total balance (here, $1,280.26).

20. The statement is material because the unsophisticated consumer would not know whether she has settled the debt in full with the current creditor if she pays the smaller amount listed in Exhibit A.

21. Similarly, the unsophisticated consumer would not know whether she had settled the debt in full with the current creditor if she subtracts the "settlement amount" from the total balance and pays that amount. If Exhibit A intends to offer settlement of the consumer's account for approximately 30% of the balance, the ambiguous language in Exhibit A would confuse the unsophisticated consumer into overpaying.

22. Client Service's language leaves open the possibility that the consumer will pay $550 or $1280.26, only to have the entire payment applied to the "full balance," resulting in the consumer still owing on the debt.

3

23. Treating either payment as a partial payment instead of a settlement payment would permit Chase or third party debt collectors hired by Chase to continue to try to collect on the same debt.

24. A consumer could pay $550 or $1280.26 and not know whether he or she has resolved the account.

25. The consequences of misleading a consumer with respect to settling a debt are much greater than misleading about the amount of the debt, in that a significantly larger portion of the balance may remain after a failed "settlement" than the few additional dollars or cents remaining (usually due to the addition of interest or fees) after a "full payment." *See eg. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000).

26. Client Service's misrepresentations are material misrepresentations because they mislead the unsophisticated consumer about the nature of the settlement offer.

### *Schmitz Letter*

27. On or about December 12, 2016, Client Services mailed a debt collection letter to Schmitz regarding an alleged debt, allegedly owed to "Capital One Bank" ("Capital One"). A copy of this letter is attached to this complaint as Exhibit B.

28. The alleged debt identified in Exhibit B is an alleged credit card account, originally owed to Capital One.

29. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Schmitz inserted by computer.

30. Upon information and belief, Exhibit B is a form debt collection letter used by Client Services to attempt to collect alleged debts.

31. Schmitz used this credit card only for personal, family or household purposes, namely, purchases of household goods and services.

32. Schmitz did not open or use the credit card account for any business purpose.

33. Exhibit B states the following:

```
Balance Due At Charge-Off:    2,073.84
Interest:                         0.00
Other Charges:                    0.00
Payments Made:                    0.00
Current Balance:              2,073.84
```

34. The credit card account identified in Exhibit B was in default, closed, and upon information and belief, charged off by Capital One before Client Services sent Exhibit B to Schmitz.

35. Exhibit B is confusing and misleading to the unsophisticated consumer.

36. Exhibit B threatens to collect "Interest" and "Other Charges." Although the amounts of each in Exhibit B is $0.00, the letter implies that there could be interest or costs added to the debt in a future letter. *Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

37. Upon information and belief, neither Capital One nor Client Services actually add interest and costs to consumer collection accounts.

38. Furthermore, there is no explanation in the letter as to what the "Other Charges" are or would be.

39. The unsophisticated consumer interprets references to "charges" in collection letters, even when the amount is $0.00, as representations that the debt collector has a right to add charges to the alleged debt, and that charges will be sought in future letters.

40. Schmitz was confused by the nebulous reference on Client Service's letter to "Other Charges" and has no idea what those charges are, potentially could be, or whether they are legitimate.

41. The unsophisticated consumer would be confused by the nebulous reference on Client Service's letter to "Other Charges" and would have no idea what those charges are, potentially could be, or whether they are legitimate.

42. Further, Client Services could not add any collection fees to Schmitz's account.

43. Any purchases made with a personal credit card account were "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

44. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

45. Credit card transactions are, by definition, "transactions pursuant to open-end credit plans." Wis. Stat. § 421.301(27)(a).

46. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable

6

>expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

47. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

48. Because credit card transactions are consumer credit transactions, <u>Exhibit A</u>, with its nebulous statement about "other charges," falsely states or implies that Client Services has a right to add collection fees to the debt.

49. Even if a provision of any agreement between Schmitz and the original creditor would purport to permit Client Services to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

50. The alleged debt has been charged off by Capital One. There are no fees that could conceivably be added to Plaintiff's alleged debt.

## THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 ET SEQ.

51. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly

7

prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

52. The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

53. Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

54. Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In*

*re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

55. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to

encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

56. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

57. Plaintiffs were confused by Exhibits A and B.

58. The unsophisticated consumer would be confused by Exhibits A and B.

59. Plaintiffs had to spend time and money investigating Exhibits A and B.

60. Plaintiffs had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiffs on the consequences of Exhibits A and B.

61. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

62. 15 U.S.C. § 1692e(2)(a) specifically prohibits: "The false representation of—the character, amount, or legal status of any debt."

63. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

64. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

10

## COUNT I – FDCPA

65. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. Count I is brought on behalf of Plaintiff Ottmann.

67. Exhibit A includes an offer that is misleading as to the terms of the purported settlement offer.

68. If a consumer chooses to mail in payments in an attempt to take advantage of the settlement listed on the letter, Defendant could, under one interpretation of Exhibit A, apply the payments toward the "full balance" instead of settling the debt.

69. Exhibit A misleads the unsophisticated consumer and encourages payments that do not actually settle the alleged debt, allowing Chase or third party debt collectors hired by Chase to continue collecting the remaining balance.

70. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692f.

## COUNT II – FDCPA

71. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Count I is brought on behalf of Plaintiff Schmitz.

73. The references in Client Service's letters to "Interest" and "Other Charges" are false, misleading and confusing.

74. Client Services threatened to add interest and charges to Plaintiff's debts when neither Client Services nor Capital One are entitled to any fee and do not add interest to accounts such as Plaintiff's.

75. Client Service's misrepresentation of the amounts it would attempt to collect is an unfair and/or unconscionable method by which to try and collect an alleged debt.

76. The unsophisticated consumer would be confused by the nebulous references in Client Service's letter to "Other Charges" and would have no idea what those charges are, potentially could be, or whether they would be legitimate.

77. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692f and 1692f(1).

## CLASS ALLEGATIONS

78. Plaintiffs bring this action on behalf of two Classes,

79. Class 1 consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between August 1, 2016 and August 1, 2017, inclusive, (e) that was not returned by the postal service. Plaintiff Ottmann is the designated representative for Class 1.

80. Class 2 consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between August 1, 2016 and August 1, 2017, inclusive, (e) that was not returned by the postal service.

81. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class. Schmitz is the designated representative for Class 2.

82. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members.

The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10) and 1692f.

83. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

84. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

85. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

86. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: August 3, 2017

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000

(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com

14